JOURNAL ENTRY AND OPINION
Plaintiffs-appellants James and Diane Trepka, pro se, husband and wife, appeal from the September 4, 1998 order of the trial court which adopted the findings of a Magistrate and found in favor of defendant-appellee Jean Schultz in the action seeking (1) rental payments for the balance of a terminated lease between the parties and (2) payments for alleged damages to the rental property. For the reasons adduced below, we affirm.
A review of the record on appeal indicates that defendant-tenant, a woman in her seventies, entered into a written one-year lease with plaintiffs-landlords on June 15, 1996, for the two-bedroom upstairs unit of a residence located at 6343/45 Chestnut Hills, Parma, Ohio.[1] The monthly rent payment was $595.00, and tenant supplied a damage deposit in the amount of $595.00. Thereafter, tenant reported a number of defects and problems which concerned her, to the landlords.
On October 30, 1996, tenant's legal counsel sent a 30-day demand letter to the landlords pursuant to R.C. 5321.07. This letter identified approximately seventeen alleged violations and asked that these be corrected, and informed the landlords that, absent such correction, the tenant would seek a rent deposit with the court, a court order, or termination of the lease.
On December 3, 1996, tenant initiated the deposit of rent (for December's rent) with the trial court.
On December 24, 1996, being dissatisfied with the lack of progress by landlords in correcting the alleged defects and problems, tenant sent a letter pursuant to R.C. 5321.07(B)(3) informing landlords that she was terminating the lease agreement and requested that the December rent on deposit with the court be released to the landlords.
On January 15, 1997, tenant vacated the premises.
On January 2, 1998, the original Complaint issued in small claims court seeking $3,000 in damages.
On January 28, 1998, the matter was heard by Magistrate Leary. On February 18, 1998, Magistrate Leary found in favor of the tenant as follows: (1) that tenant was responsible for the rent ($595) for January of 1997; (2) that forfeiture of the damage deposit represented payment in full for the January, 1997, rent; (3) that tenant pay costs. Following this report, the landlords requested on February 27, 1998, that a transcript of the hearing be prepared so that they could properly file objections to the report.
On March 3, 1998, the trial court noted that the audio tape of Magistrate Leary's hearing was unintelligible and ordered the following: (1) that App.R. 9 (C) authorized the parties to submit a statement of the proceedings when no transcript is available; (2) that objections were to be filed by March 13, 1998, with briefs in opposition to those objections due by March 23, 1998. These time parameters were later amended to provide objections by March 19, 1998, and briefs in opposition thereto by March 30, 1998.
Landlords filed their objections on March 13, 1998. On March 23, 1998, tenant filed a motion to dismiss on the grounds that landlords did not file a statement of proceedings. Landlords filed on March 30, 1998, a brief in opposition to dismissal.
On April 7, 1998, the trial court, seeking to do justice, ordered that the matter be re-heard before Magistrate Fink.
On May 19, 1998, the matter was heard by Magistrate Fink.[2]
On June 19, 1998, Magistrate Fink issued his report, coming to the same conclusions as Magistrate Leary.
Landlords filed objections to Magistrate Fink's report on July 16, 1998. On September 4, 1998, the trial court overruled these objections and adopted the report of Magistrate Fink in a two-page final order. The notice of appeal from that final order was filed by landlords on October 1, 1998.
The landlords present six (6) assignments of error for review. These assignments, which will be addressed in an order other than that presented by appellants, can be viewed in two groupings. The first group, which addresses certain evidentiary admissibility issues, consists of assignments IV and V. The second group, which address the application of R.C. 5321, et seq., and manifest weight of the evidence, consists of assignments I, II, III, and VI.
The first group of assignments state the following:
IV
 A DOCUMENT SPECIFICALLY EXCLUDED AS EVIDENCE BY THE MAGISTRATE HAS BEEN TREATED AS EVIDENCE BY THE PARMA MUNICIPAL COURT AND REMAINS IN THE CASE FILE AS IF IT WERE A VALID DOCUMENT IN EVIDENCE, AVAILABLE FOR DECISION-MAKERS [SIC] TO CONSIDER.
V
 A VIDEOTAPE IN EVIDENCE DEMONSTRATING THE CONDITION OF THE SUBJECT LEASED PROPERTY WAS TREATED IMPROPERLY. THE TAPE WAS PRODUCED BY THE DEFENDANT WITH VIDEO AND AUDIO COMPONENTS. PLAINTIFF DID NOT HAVE THE OPPORTUNITY TO REBUT OR CHALLENGE THE AUDIO COMMENTS DEFENDANT MADE ON THE SUBJECT VIDEOTAPE OR TO CROSS EXAMINE DEFENDANT ON AUDIO STATEMENTS MADE ON THE TAPE.
With regard to assignment IV, appellants complain that the case file contains Defendant's Exhibit D, titled "Move-in Conditions in the Upstairs Room, Garage, Basement and Yard at 6245 Chestnut Hills Drive on June 20, 1996." This exhibit was objected to by the landlords at Magistrate Fink's hearing. In response to the objection, Magistrate Fink stated that the exhibit was inadmissible due to a lack of foundation, but that he would leave it in the file. See hearing transcript at page 25-26. There is no evidence that the trial court, either at Magistrate Fink's level or the judge's final order, utilized this particular exhibit in its deliberations. The mere fact that the exhibit remained in the case file demonstrates no prejudice to the landlords. Accordingly, assignment IV is without merit.
With regard to assignment V, appellants challenge the use of the audio portion of the videotape prepared by defendant-tenant. The record demonstrates that Magistrate Fink, out of a concern for the landlords' objection to the use of the audio portion of the videotape, did not listen to the audio track of the videotape when he reviewed that tape during his deliberations. See hearing transcript at page 26-27. Accordingly, assignment V is without merit.
The second group of assignments state the following:
I
 WITHIN THE THREE JUDICIAL OUTCOMES IN THIS CASE, THOSE OF MAGISTRATE FINK, MAGISTRATE LEARY, AND JUDGE SPANAGEL, THERE WERE DIRECT CONFLICTS OF OPINION REGARDING THE APPLICATION OF THE CONCEPT, CONSTRUCTIVE EVICTION. HOWEVER, CONSTRUCTIVE EVICTION IS SPECIFICALLY AND NARROWLY DEFINED IN ORC 5321 AND DOES NOT PERMIT SUCH VARIANCE OR OPINION.
II
 DEFENDANT DID NOT COMPLY WITH THE REQUIREMENTS OF ORC 5321.07
IN ORDER TO TERMINATE THE SUBJECT LEASE. DEFENDANT TERMINATED THE SUBJECT LEASE UNILATERALLY IN VIOLATION OF THE LEASE AND IN OPPOSITION TO THE DEFINED PROCESS SPECIFIED IN ORC 5321.07.
III
 THE ALLEGED DEFECTIVE PROPERTY CONDITIONS PRESENTED BY DEFENDANT WERE NOT OF A DEGREE OF SEVERITY TO AMOUNT TO CONSTRUCTIVE EVICTION. THERE WAS THEREFORE NO BASIS FOR DEFENDANT TO TERMINATE THE SUBJECT LEASE IN COORDINATION WITH ORC 5321.07.
VI
 MAGISTRATE LEARY'S AND MAGISTRATE FINK'S DETERMINATION OF THE FACTS ARE NOT CONSISTENT WITH THE TESTIMONY AND EVIDENCE PROVIDED TO THEM AT THEIR RESPECTIVE HEARINGS. THE MAGISTRATES IGNORED THE PROVISIONS OF THE LEASE PLAINTIFF AND DEFENDANT SIGNED AND IGNORED OTHER FACT EVIDENCE IN THE CASE TO REACH THEIR RESPECTIVE RECOMMENDATIONS. JUDGE SPANAGEL, RELYING ON THE MAGISTRATES' RECOMMENDATIONS, THEN REACHED A DECISION NOT CONSISTENT WITH THE FACTS IN THIS CASE.
Ohio's Landlord-Tenant Act, R.C. 5321, et seq., as recognized by the trial court, provides the statutory framework for this case.
R.C. 5321.04 (A) states, in pertinent part:
 (A) A landlord who is a party to a rental agreement shall do all of the following:
 (1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;
 (2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;
 (3) Keep all common areas of the premises in a safe and sanitary condition;
 (4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by him; * * *.
A tenant who feels that the landlord has violated one or more of the obligations mandated by R.C. 5321.04 (A) has a remedial procedure pursuant to R.C. 5321.07 (A) and (B), which states:
 (A) If a landlord fails to fulfill any obligation imposed upon him by section 5321.04 of the Revised Code, other than the obligation specified in division (A)(9) of that section, or any obligation imposed upon him by the rental agreement, if the conditions of the residential premises are such that the tenant reasonably believes that a landlord has failed to fulfill any such obligations, or if a governmental agency has found that the premises are not in compliance with building, housing, health, or safety codes that apply to any condition of the premises that could materially affect the health and safety of an occupant, the tenant may give notice in writing to the landlord, specifying the acts, omissions, or code violations that constitute noncompliance. The notice shall be sent to the person or place where rent is normally paid.
 (B) If a landlord receives the notice described in division (A) of this section and after receipt of the notice fails to remedy the condition within a reasonable time considering the severity of the condition and the time necessary to remedy it, or within thirty days, whichever is sooner, and if the tenant is current in rent payments due under the rental agreement, the tenant may do one of the following:
 (1) Deposit all rent that is due and thereafter becomes due the landlord with the clerk of the municipal or county court having jurisdiction in the territory in which the residential premises are located;
 (2) Apply to the court for an order directing the landlord to remedy the condition. As part of the application, the tenant may deposit rent pursuant to division (B)(1) of this section, may apply for an order reducing the periodic rent due the landlord until the landlord remedies the condition, and may apply for an order to use the rent deposited to remedy the condition. In any order issued pursuant to this division, the court may require the tenant to deposit rent with the clerk of court as provided in division (B)(1) of this section.
(3) Terminate the rental agreement.[3]
The record on appeal demonstrates that the tenant, beginning shortly after her moving in and ending upon the written notice of counsel on October 30, 1996, made complaints to the landlords concerning a number of conditions and problems, including: (1) a hornets' nest outside a bedroom window; (2) interior painting; (3) the non-removal of a window air-conditioning unit which caused drafts; (4) a pile of animal feces on the garage roof adjacent to the rear porch of tenant's unit; (5) dirty woodwork; (6) ants coming in through the windows and heating ducts; (7) stained kitchen counter-top surfaces; (8) inadequate parking space in the tenant's portion of the garage caused by the landlords' (or downstairs tenant's) storage of a roll of carpeting; (9) an inordinate amount of dust and dirt in the heating ducts which aggravated tenant's respiratory system and allergies; (10) draftiness from inadequate weatherstripping; (11) inoperable smoke detector due to a lack of a battery; (12) lack of access to the unit because there was no lock on the common area screen door leading to the unit (apparently, the tenant complained that the downstairs tenant would lock the common area screen door using the existing hook, thereby depriving the other tenant of access to her unit); (13) complaints that someone was stealing mail from tenant's mailbox, so this defendant-tenant requested that a lock be provided on her mailbox; (14) complaints of someone gaining access to the unit without notice to this tenant while tenant was away; (15) dirty carpeting in tenant's bedroom which aggravates her allergies; (16) pet hair and dander in the upstairs apartment unit which aggravates tenant's allergies; (17) lack of adequate lighting in the driveway and garage which impacted the safety of the tenant.
These concerns went uncorrected after thirty days, which prompted the tenant, who was current with her rent payments, to deposit her rent with the trial court on December 3, 1996, pursuant to her remedy under R.C. 5321.07(A) and (B). Landlords, at Magistrate Fink's hearing, admitted that many of these complaints were not corrected.
In reviewing a weight-of-evidence claim, we note that a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. Also, we will defer to the findings of the trial court since it was in the best position to observe witnesses and weigh their credibility. Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77, 80. Finally, we are mindful that a difference of opinion on the credibility of witnesses and the evidence is not grounds for reversal. Id.
Based upon the evidence presented, much of which was open to differing interpretations by the parties, there was some competent and credible evidence presented upon which the trial court could conclude that the landlords breached obligations owed to the tenant under R.C. 5321.04 (A). Accordingly, these final four assignments fail.
Judgment affirmed.
It is ordered that appellee recover of appellants her costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Parma Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
DIANE KARPINSKI, P.J., and ANNE L. KILBANE, J., CONCUR.
 _______________________ JAMES D. SWEENEY JUDGE
[1] The mother of one of the plaintiffs lived in the downstairs unit of the property. See transcript of Magistrate Fink's May 19, 1998 hearing, at page 20.
[2] A copy of the transcript from this hearing is in the record on appeal. The exhibits which were admitted at the earlier Magistrate's hearing were also admitted before Magistrate Fink.
[3] The court notes that paragraph C of this section does not apply to the facts of the case. R.C. 5321.07 (C) provides:
 (C) This section does not apply to any landlord who is a party to rental agreements that cover three or fewer dwelling units and who provides notice of that fact in a written rental agreement or, in the case of an oral tenancy, delivers written notice of that fact to the tenant at the time of initial occupancy by the tenant.
The lease agreement in question did not contain written notice of the fact that the rental agreement covered "three or fewer dwelling units."